BLAKE, APPELLEE, *v.* AMREIHN ET AL., APPELLANTS.

(Decided February 3, 1941.)

*Mr. Harry S. Bugbee,* for appellee.
*Messrs. Williams, Eversman & Morgan* and *Mr. Lawrence Broh-Kahn,* for appellant, William R. Porter.

OVERMYER, J. This suit was filed in the Common Pleas Court October 19, 1939, by plaintiff, appellee herein, Lula A. Blake, against ten defendants, five of whom were individuals and five corporations, one of the latter being The Ottawa Hills Memorial Park Association of Toledo, Ohio, a non-profit cemetery company. The action was based generally upon the same grounds alleged and sustained in the cases of *Snyder* v. *Ridge Hill Memorial Park,* 61 Ohio App., 271, 22 N. E. (2d), 559, decided by this court and affirmed in 135 Ohio St., 632, 22 N. E. (2d), 411, and *Newell* v. *Cleveland Cemetery Assn.,* 61 Ohio App., 476, 22 N. E. (2d), 847, affirmed in 135 Ohio St., 657, 22 N. E. (2d), 414.

The suit was one in equity and was heard and determined in the lower court, resulting in a finding and decree for plaintiff generally, as prayed for in the

petition. No appeal was prosecuted from that decree by any of the original defendants.

In the course of the hearing of the suit, it developed that one William R. Porter, a resident of Cuyahoga county, Ohio, was one of the original three promoters of the cemetery herein referred to, and was a party to a contract involved, and, upon motion by plaintiff and by a supplement to her petition, Porter was made a party defendant in the suit, his motion to quash service upon him was overruled, followed by the overruling of his demurrer to the petition and the filing of his answer. Hearing was had upon the issues made as to Porter and in the final findings of the court the relief sought by plaintiff against Porter was granted. From the decree entered on the findings, Porter appeals to this court on questions of law, which is the appeal here submitted and considered.

The Ottawa Hills Memorial Park Association cemetery is one promoted and organized upon the same plan and principles as the cemeteries involved in the *Snyder* and *Newell cases, supra.* That is, a farm was purchased by the promoters in the outskirts of Toledo, and a corporation for profit, called The Parkland Improvement Company, was organized to take title to the property, embellish and beautify the property, survey and lay out driveways, burial lots and spaces, erect buildings and chapels and plant trees and shrubs. A corporation not for profit, The Ottawa Hills Memorial Park Association, was then organized by the same parties to conduct the cemetery part of the enterprise, and a third corporation called Park Sales, Inc., handled the sale of lots and burial spaces. Burial lots were sold, following an aggressive advertising campaign, and plaintiff purchased and is the owner of 74 lots (296 burial spaces) for which she paid $13,175. Her suit was brought in a representative capacity for her benefit and the benefit of all other lot owners. She

seeks the same relief as that sought in the cases above cited.

Two of the promoters, a Mr. Zollner and a Mr. Amreihn, had previous experience in promoting similar cemetery enterprises in other cities and were strangers here. Mr. Zollner was acquainted with Mr. Porter of Cleveland. In 1935 Zollner and Amreihn called upon Porter and explained to him the plan to promote a cemetery at Toledo, represented to Porter the profits to be made and solicited him to finance the Toledo project. After investigation and consideration of the project and several visits to Toledo to inspect the properties, Porter agreed to join the enterprise, and on July 24, 1935, a written contract, prepared by Porter's attorney, was entered into between Porter, as party of the first part, and Zollner and Amreihn, as parties of the second part, by the terms of which it was agreed, among other things, as follows:

"Second parties propose to engage in an enterprise consisting of the development of land for use for cemetery purposes, and the sale of said lands or burial rights therein. First party proposes to furnish the capital necessary to purchase certain lands for which options have been taken in the name of Donald F. Zollner, and which options have been assigned to first party, the amount of cash capital to be contributed by first party being the amount stated in said options for the purchase of the front or south 52 acres * * *. This agreement is entered into for the purpose of prescribing the manner of repayment to said first party of the money so *invested* by him, and the further payment to him of other sums, arising from the operation of said enterprise, as compensation for his services and the assistance and advice contributed thereto. Second parties agree to cause a corporation to be formed and organized to accomplish the purposes above mentioned, to wit: the purchase, development

and sale of said land for cemetery uses. * * * Second parties agree that they will invest at least the sum of $3,000 in the capital structure of said corporation. When the organization of said corporation has been completed, second parties agree that it will properly adopt and undertake the agreements herein to be performed by second parties, and, thereafter, said corporation shall be primarily liable, and second parties secondarily liable * * * until the *investment* of first party shall have been fully repaid; * * *. First party agrees to supply the funds required to purchase said 52-acre tract * * *. Title to said lands may be taken by the corporation, provided that its organization has been completed * * * otherwise, title shall be taken by first party, to be conveyed by him to said corporation * * *. No lien or encumbrance shall be created against said land by said corporation, but it shall have the right to sell burial lots and apply a proportion of the sales price to the repayment of said *investment* * * *. Before the title to said land shall be conveyed to said corporation, second parties agree that they will deposit in trust or escrow for the benefit of first party all of the capital stock of said corporation * * * as collateral security for the performance by said corporation of this agreement.

First party further agrees to give his advice and assistance to the enterprise, and, in consideration of the supplying of the purchase money for said land by him and the giving of said advice and assistance, he shall receive reimbursement from said corporation for said *investment,* and, in addition thereto, *he shall receive ten per cent of the gross cash receipts* of said corporation *derived from the sale of burial lots, burial rights and other sources of income of said corporation.* * * * In the event of the liquidation of the corporation *first party shall participate to the extent of 10 per cent of the net assets of the corporation.* * * * In any event, said corporation shall repay first party the

money *so invested* by him, on or before one year from the date of *such investment* * * *. It is understood and agreed that said corporation may at any time convey all or a part of the land acquired by it as aforesaid to a *cemetery association, retaining the privilege of selling and conveying burial rights therein and the right of constructing tombs and mausoleums thereon.* * * *" (Italics ours.)

We have italicized the word "investment" because appellant now argues vigorously that the money he put up to start and to finance the enterprise was nothing but a loan to a friend (Zollner), and we have italicized other provisions for emphasis and recited the terms of the contract at some length because this contract and its provisions, together with other facts shown, determines, under the settled law, practically all the issues presented in this appeal. The seventeen errors assigned by appellant are summarized in the brief as presenting three major questions, *viz.*:

1. The jurisdiction of the court over the defendant's person;

2. Numerous technical, legal and equitable questions, such as joinder of causes and parties, whether action is at law or in equity, clean hands of plaintiff, etc.;

3. The merits of the case or the defendant's liability.

The evidence shows that within a few months after the corporations referred to in the contract were organized and functioning, Porter had been repaid the $9,278.50 which he had "invested" in the enterprise, and that within four years he had been paid some $15,000 in cash and had a total of "accounts-receivable" items on the books of the profit corporation for some $38,700 under the ten-per-cent provision of the above contract—representing his return thus far on his $9,278.50 "investment," which he now says was merely a loan.

The other two promoters, Amreihn and Zollner, had

accounts receivable at the same time of $43,298.56 and $44,468.56 respectively. With the cemetery lots less than fifty per cent sold when action was brought, it is shown that Porter's earnings on his claimed loan would have exceeded $150,000 when the cemetery had been sold out according to plans.

The relief sought against Porter by plaintiff's supplement to the petition was that the defendant, The Ottawa Hills Memorial Park Association, "should have and recover from said William R. Porter all moneys received by him from any of the defendants herein, less only the sums, if any, actually advanced by him to the defendant, The Parkland Improvement Company and actually used by said company in the purchase of any of the real property described in plaintiff's petition herein."

The lower court found in favor of the plaintiff and against defendant Porter and decreed that the above contract was unlawful, void and of no effect; and that all of Porter's claims, accounts receivable, liabilities and demands of every kind, against any and all other defendants be cancelled and declared invalid and void. The court also quieted title to all property in The Ottawa Hills Memorial Park Association and barred Porter from asserting any claim, lien or interest therein; enjoined the corporation and Zollner and Amreihn from paying any money or delivering any property to Porter; ordered an accounting as between The Ottawa Hills Memorial Park Association and Porter "upon the basis that defendant William R. Porter and each of the other defendants previously ordered to account herein shall be severally liable for the entire amount which may be found due and payable to defendant, The Ottawa Hills Memorial Park Association, and through said association, to the owners of sepulchre rights in The Ottawa Hills Memorial Park Cemetery in accordance with and subject to the further order of this court. * * *"

A motion for rehearing and new trial, filed by Porter, was overruled.

The first matter presented to the court below by the supplemental petition was the validity of the contract between Porter, Amreihn and Zollner. The determination of that question required the presence of Porter as a party. His liability on this issue was joint with Amreihn and Zollner. The contract was "the keystone of the whole joint enterprise," as said in plaintiff's brief, and Porter's brief states that under the contract "the advance or loan of money was made by Porter which made it possible for defendants Zollner and Amreihn to inaugurate the cemetery enterprise." Viewing the entire picture as shown by the evidence, particularly Porter's part in it which was carried out as contemplated in the contract, the court was entirely correct in holding the whole transaction illegal and void and ordering it cancelled for the benefit of the cemetery association and the purchasers of lots in the cemetery, it being tainted with the frauds pointed out generally in the *Snyder* and *Newell cases*.

The cancellation of the contract having been decreed, the accounting which was ordered was but a necessary sequence to the granting of the relief required by the vacation of the Porter contract and the destruction of the illegal relationship existing between the profit and non-profit corporations, which had already been ordered by the court.

The court did not err in overruling Porter's motion to quash service, nor in overruling his demurrer to the supplemental petition. Porter being properly made a party and answering, a hearing was had resulting in cancellation of his contract and the ordering of the accounting. The fact that this accounting may result in a money judgment against him does not change the action from equity to law, entitling him to a jury trial. The main purposes of the suit were cancellation of illegal contracts, and accountings, and any

money judgments following these equitable proceedings are but incidental.

We have examined and considered the assignments of error and find that the judgment of the lower court as against Porter should be modified in one respect, viz.: that instead of entering judgment severally against Porter for the entire amount, if any, recoverable by the Ottawa Hills Memorial Park Association from any or all of the defendants, the judgment against Porter will be, if and when determined, for all moneys received by him from any of the defendants, less only the sums, if any, actually advanced by him to the defendant The Parkland Improvement Company and actually used by it in the purchase of any of the real estate described in the petition of plaintiff Blake, and as so modified the judgment of the lower court is affirmed and the cause remanded to the Court of Common Pleas for execution and such further proceedings as may be necessary and incidental thereto.

*Judgment modified and affirmed as modified.*

CARPENTER and LLOYD, JJ., concur.